[Filed June 24, 1886.]

# KREWSON & CO. v. J. W. PURDOM AND H. C. SLOCUM.

13   563
15   590
22    63
11*  281
16*  481
29*   78

CONVERSION—PLEADING—TITLE IN THIRD PERSON—NEW MATTER.—In an action for the conversion of personal property, an allegation in the answer that the property belongs to a third person is not new matter of defense. It only controverts the allegation of ownership contained in the complaint. It is doubted, however, whether such fact could be proved under a mere denial of plaintiff's title.

SAME—POSSESSION AS EVIDENCE OF TITLE.—Possession in such action is sufficient evidence of ownership to enable a party to maintain an action against one who interferes with the property without right. But it seems that possession alone is not sufficient to authorize a recovery of the value, unless it be an actual holding under a claim of right.

APPEAL—SPECIFICATION OF ERROR IN NOTICE.—A notice of appeal which states in general terms the nature of the objections relied upon, and refers to the bill of exceptions, while not a satisfactory practice, yet specifies the grounds of error with sufficient certainty to be considered in this court.

EVIDENCE—INTERPRETER.—It is not error to permit a person called as a witness to translate a document offered in evidence, which is in a foreign language; nor is it necessary that before doing so he should be sworn as an interpreter.

EVIDENCE—IMPEACHMENT OF WITNESS—CONTRADICTORY STATEMENTS.—As a foundation for impeachment, it is competent, on cross-examination, to ask a witness, with particulars of time, place, and circumstance, whether he has not made other specified statements inconsistent with his present testimony.

ERROR—INSTRUCTION.—It is not error to refuse an instruction which correctly states the law applicable to a contract in evidence, but ignores the

fact that there is evidence of another agreement between the same parties to which a different rule would apply.

CONVERSION OF PERSONAL PROPERTY—TITLE IN THIRD PERSON.—In an action by K. & Co., claiming title against a sheriff who had levied upon the property in controversy as the property of G., and the sheriff had answered, setting up title in A, a stranger, an instruction that if plaintiff was in possession at the time of the levy, and the title was in A, that fact would not defeat the plaintiff's right to recover without showing also that the defendant took possession of the property as A's, and by direction of A, was error. The defense was made out whenever it was shown that A owned the property.

DOUGLAS COUNTY.    Defendants appeal.    Reversed.

*R. Williams,* for Appellants.

California and some other states hold that it is not necessary, in trover, for a party to plead it in order to entitle him to prove title in a third party. In replevin, the rule is otherwise. (2 Greenl. Ev., sec. 563.) In either case, however, if the defendant proves property in a third party, the plaintiff cannot recover. (*Lewis* v. *Morse,* 20 Conn. 211; *Loomis* v. *Green,* 7 Me. 389; *Roberts* v. *Wentworth,* 5 Cush. 192.) If the sale of the wood from Gotardi & Co. to plaintiffs was not complete, but merely executory, and anything remained yet to be done to perfect the sale, the defendants were not liable to plaintiffs for the conversion of it. (2 Greenl. Ev., secs. 636–638; *Clapp* v. *Glidden,* 39 Me. 448; *Cardinell* v. *Bennett,* 52 Cal. 476; *The Eglee Cotton Cases,* 22 Wall. 180; Benjamin on Sales, sec. 308.) The questions asked by appellant, and excluded by the court called the attention of the witness to the circumstances of the times, places, and persons present, and the statements upon which his answers were sought, were related to him with sufficient precision to entitle the defendants to his answers. (Gen. Laws Or., p. 274, sec. 831; *Sheppard* v. *Yocum,* 10 Or. 402.)

*William R. Willis*, for Respondents.

The assignments of error from the fourth to and including the tenth cannot be considered by this court, for the reason that they do not either of them specify any particular ground of error upon which appellant intends to rely on this appeal.   (See Code, p. 218, sec. 527; *N. P. Terminal Co.* v. *Lowenberg et al.*, 11 Or. 286; *State* v. *McKinnon*, 8 Id. 487, 489, 490; *Hutton* v. *Reed et al.*, 25 Cal. 478, 487, 490; *Gulf W. T. R. Co.* v. *Montier*, 61 Tex. 122; *B. & M. R. R. Co.* v. *Harris*, 8 Neb. 140, 141; *Blizzard* v. *Riley*, 83 Ind. 300; *Hoefer* v. *Burlington*, 59 Iowa, 281; *Baylis* v. *Stout*, 48 Mich. 215–217.)   The principal objections to the ruling of the court, in refusing evidence appearing in the bill of exceptions, appears in the cross-examination of Krewson and Gotardi, witnesses for plaintiffs.   The refusal of answers on cross-examination is largely discretionary, and the appellate court will not reverse unless the discretion has been so exercised as to have produced injury.   (*Wilson* v. *Genseal*, 1 N. E. Rep. 905–908; *Cooper* v. *Randall*, 59 Ill. 317–322.)   Also, question 41 asked Gotardi is in substance the same as held inadmissible by this court in this case when here before.   (11 Or. 266–268.)

THAYER, J.   This appeal is from a judgment of the Circuit Court of the county of Douglas, rendered in an action brought by the respondents against the appellants for the conversion of certain cord-wood.   The action was in the ordinary form to recover damages for the conversion of personal property.   The answer denied all the material allegations of the complaint, and alleged that said cord-wood was the property of Herman and Robert Aulauff, partners, under the firm name of Aulauff Brothers.   The respondents, at the trial, attempted to establish that the wood in question originally belonged

to some Italians, of whom one John Gotardi was a principal actor; that they constituted a company under the name of Gotardi & Co.; that said company cut the wood on the land of one De Launey, in Douglas County, under the contract to pay De Launey stumpage, at the rate of ten cents a cord; that they subsequently, and on or about the nineteenth day of May, 1883, sold it to the respondents for two dollars and a half a cord, less the price of hauling it to the railroad, and the stumpage; that after said sale by Gotardi & Co. to the respondents, and on or about the twenty-sixth day of May, 1883, the appellant, J. S. Purdom, who was then sheriff of said county of Douglas, by his deputy the appellant, H. C. Slocum, attached the wood by virtue of an attachment issued out of the said Circuit Court in an action wherein I. R. Dawson, assignee of the said Aulauff Brothers, was plaintiff, and certain parties designated as a company, under the name of Maria & Co., were defendants, the said Gotardi being one of the defendants; that said appellants refused to deliver the wood to the respondents upon demand made by them therefor, and that subsequently it caught fire and mostly burned up. The appellants claimed, and attempted to establish, that the said Aulauff Brothers purchased from Drain & Co. a contract they had with the railroad company to supply it with wood, and then contracted with said Maria & Co. to cut the wood; that said Maria & Co. included all the Italians belonging to the Gotardi company; that said Aulauff Brothers contracted with the said De Launey for the wood upon the place, and paid him the stumpage, and that all the wood was cut by said Maria & Co. for said Aulauff Brothers, and that they paid for the cutting thereof in supplies and money. The respondents maintained that after the Aulauffs made the contract with Maria & Co. to cut wood, Gotardi and his associates, con-

sisting of ten Italians, came to the state and went to work for said Maria & Co. at a stipulated price, and were not a part of said company; that they continued working for Maria & Co. until about the 20th of February, 1883, and then quit, and went and contracted with said De Launey for wood on his place; agreed to pay him ten cents per cord for stumpage, and cut the wood in question, and that neither Maria & Co. nor Aulauff Brothers had anything to do with the matter; that they got their supplies from Aulauff Brothers while they were cutting said wood, through Maria & Co., and in payment of a debt said Maria & Co. were owing them for the work they did for said company; that on or about the seventh day of May, 1883, they made a contract with the respondents to receive from them supplies, and to let them have the wood; and that about a week before the wood was attached the respondent, J. W. Krewson, went up to De Launey's place, and Gotardi turned it over to him; that the wood was scattered over the premises where it had been cut; that it was not measured, but estimated to be between five and six hundred cords; that the said J. W. Krewson marked part of the piles "K. & Co." The jury returned a verdict for the respondents, and against the appellants, for the sum of $1,050, upon which the judgment appealed from was entered.

A question was raised upon the argument as to whether the allegation in the answer, that the wood was the property of Aulauff Brothers, was new matter of defense, which would be taken as true if not controverted by a reply. There were two amended answers filed in the action, as appears from the transcript, in which said allegation was made, and a reply was filed to the first one denying it, but it does not appear that any reply to the latter one was filed. The respondent's counsel, however, contended that it was agreed by the counsel in open

court, when the last amended answer was filed, that the reply to the former one should be deemed a reply to that. Said counsel also filed a motion to expunge from the transcript said latter answer, upon the grounds that no order permitting its filing appears to have been made. The court was not inclined to entertain the motion. It would, however, have permitted counsel to take steps to have the record of the court below corrected if it had deemed it important, but the view I have taken of the question renders it unnecessary.

In an action for the conversion of personal property, an allegation in the answer that the property belongs to some third person is not, in my opinion, new matter of defense. It only controverts the allegation of ownership contained in the complaint. I am not prepared to say that such fact could be proved, under a formal denial of such allegation, but am satisfied that it only amounts to a traverse, and that proof of it merely disproves the plaintiff's title to the property, which he is bound to make out in the first instance. The plaintiff must have a general or special title in the property in order to maintain the action. (*Dubois* v. *Harcourt*, 20 Wend. 43.) And proof that it was owned and possessed by a third person defeats his right of recovery. It shows that he never had a cause of action; that a material allegation in his complaint is untrue. I do not maintain that a person, having only possession of personal property, cannot recover against a wrong-doer for the conversion of it. Possession is sufficient evidence of ownership to enable a party to maintain such an action as against one who interferes with it without having any right. In *Duncan* v. *Spear*, 11 Id. 54, a purchaser of personal property at a void sale upon execution was held to have sufficient title to maintain trover against a stranger who converted it. And it is claimed that a trespasser can recover against

one who takes the property from him without having any better right. (6 Waite's Actions and Defenses, 218.) But I am inclined to think that possession would not be sufficient to authorize a recovery in such an action, unless it were an actual holding under a claim of right. The law could not consistently permit a party who had obtained possession of personal property in violation of its rules to recover its value against any one. It is a well-settled principle of law that the satisfaction of a judgment for the conversion of property transfers the title to the defendant in the action. How could such a result follow when the plaintiff had no title—had nothing beyond a tortious possession? The rule in trespass is of course different. In an action of that character, the recovery is for an injury to the possession, and the fact that the plaintiff has possession is sufficient to maintiff the action.

Upon the merits of this case as shown by the bill of exceptions, there was but one question, which was this: For whom was the wood in controversy cut? If Gotardi & Co. cut the wood under the circumstances testified to by J. W. Krewson, Roger De Launey, August Hineman, and Gotardi, then the sale to the respondents was valid, and if a delivery thereof to them was made, as testified to by said J. W. Krewson, they became the owners of it and entitled to recover for its conversion. On the other hand, if the said wood was cut under the circumstances testified to by Herman Aulauff, J. C. Drain, H. M. Caldwell, and Robert Aulauff, it belonged to Aulauff Brothers, and Gotardi's attempted sale of it to the respondents was a nullity, and they acquired no right under it. The question was one of fact, and the verdict of a jury thereon, whichever way it might be, would be final, and ought not to be disturbed if the trial was properly had and the case properly submitted.

The appellants contend that the court committed error

in the trial of the action, and that the judgment should be reversed. It is objected, in the outset, upon the part of the respondents, that the notice of appeal does not specify the grounds of error with sufficient certainty, and that the court should not, therefore, consider them. There are, in all, eleven grounds of error assigned; but it is only necessary to consider the following. The others are evidently untenable.

"That said Circuit Court erred at the trial of said cause in admitting evidence offered by the plaintiffs and objected to by the defendants, all of which was then and there duly excepted to by the defendants, as fully appears by the bill of exceptions on file herein.

"That said Circuit Court erred at the trial of said cause in excluding evidence offered by the defendants and objected to by the plaintiffs, to all of which defendants duly excepted, as fully appears by the bill of exceptions filed herein.

"That said Circuit Court erred at said trial in refusing to give written instructions submitted and asked to be given by the defendants, to which refusal the defendants duly excepted, as fully appears by the bill of exceptions.

"That said Circuit Court erred at the trial in giving instructions to the jury which were duly excepted to by the defendant, as fully appears by said bill of exceptions."

It can hardly be claimed that any of said grounds of error are indefinite. It would have been better, no doubt, to have specified them in the notice of appeal, instead of referring to the bill of exceptions. Still, that is the part of the record that is generally examined to ascertain whether errors have been committed in the trial of an action.

The assignments of error we propose to consider embrace four matters: the admission of evidence at the trial offered by the plaintiffs and objected to by the de-

fendants, and which was excepted to; the exclusion of evidence offered by the defendants and objected to by the plaintiffs, which was excepted to by the defendants; the refusal to give written instructions submitted and asked to be given by the defendants and excepted to by them; and the giving instructions which were excepted to by the defendants. In each case a reference was made to the bill of exceptions as showing the particular matter relied on. An examination of the bill of exceptions, in connection with the specification of the errors set out in the notice of appeal, shows clearly the matters complained of. It is no argument against such practice that an appellant often abandons many of the exceptions taken at the trial when he comes to argue the appeal. In making up a brief, and at the hearing, he may become satisfied that the majority of his exceptions have not been well taken. These are matters that cannot be avoided. Still I think, as before suggested, it would be the better practice to make the specification of errors in the notice of appeal complete without having to refer to another paper. Courts, however, must rely upon the propriety and nicety of attorneys in such affairs. An arbitrary course might enforce a better style in many instances but the real objects of a lawsuit, the administration of justice, must not be lost sight of. Substance should not be sacrificed to maintain form. As a consequence, refined notions of procedure are not carried out so thoroughly as the more fastidious portion of mankind naturally desire.

It is not claimed, I believe, that the alleged error in the admission of evidence offered by the plaintiffs at the trial applied to the admission of any evidence except that of August Hineman in regard to the reading and translation of the agreement between Gotardi and De Launey concerning the stumpage. The witness wrote

the agreement, and was present when it was signed. It was in the German language, and why he could not be called upon to read and translate it is beyond my comprehension. Something was suggested about the necessity of swearing the witness as an interpreter, in order to render him competent to translate the instrument. I do not think that was necessary. A general oath that the evidence he gave would be the truth, etc., was amply sufficient. I do not think there is anything in that point worthy of consideration. The position is too refined to be indorsed.

The next assignment, the evidence excluded by the court, is far more serious. This alleged error is confined almost entirely to the cross-examination of Gotardi. He was an important witness, and the evidence he gave was material. He denied emphatically that he belonged to the Maria company, who confessedly were cutting wood for Aulauff Brothers; claimed that he had no relations with that company, except that he worked for the company, at a stipulated price, from November until February, when he and his associates began working by themselves and for themselves; testifed that Maria & Co. had no interest in the wood-cutting upon the Roger De Launey place; that his company, called Gotardi & Co., bought it from De Launey, cut it for themselves, and finally sold it to Krewson & Cellers, the respondents; and that Aulauff Brothers never had any interest in that wood. If that testimony were true, then the respondents owned the wood, and the appellants had no defense whatever to the action. In order to disprove it, the appellants had to show by direct testimony that Gotardi's statement was untrue, or to impeach the witness. The law authorizes the impeachment of a witness by contradictory evidence, by evidence that his reputation for truth is bad, or that his moral character is such as to render him

unworthy of belief, or by evidence that he has at other times made statements inconsistent with his present testimony. (Civil Code, secs. 830, 831.) The appellants, in view, no doubt, of the latter right, asked of the said witness Gotardi, upon his cross-examination, the following questions, viz.:

Int. 37. " Were you not in Aulauff's place in Drain on the 20th of February, 1883, and before going to work on the De Launey place? and did you not then and there, in the presence of Robert Aulauff, John C. Drain, and Mr. Caldwell, agree with Herman Aulauff, of the firm of Aulauff Brothers, that you would cut the wood on the De Launey place for the said Aulauff Brothers?"

Int. 38. " Did you not then and there, in the presence of the said Robert Aulauff, John C. Drain, and Mr. Caldwell, ask to be released from the indebtedness that had been made by the Maria company prior to that date? And did not Mr. Aulauff then and there, in their presence, refuse to release you from said indebtedness?"

Int. 39. " Was there any talk had that day about the indebtedness between you and them?"

Int. 41. " Did you not, on or about the fifteenth day of June, 1883, on the premises of Roger De Launey, where said wood was cut, in the presence of him, the said James Ward, point to the wood that had been attached, and say to him, the said James Ward, that the wood belonged to Aulauff Brothers, and that you had cut it for them, or words to that effect?"

These several questions were objected to by the respondent's counsel, upon the grounds that no sufficient foundation had been laid for the question; that it was not cross-examination, and was incompetent, and the court excluded each of them. Said questions, I think, beyond doubt, were competent to lay a foundation for the impeachment of the witness. If the facts elicited

were true, then the said witness's acts and declarations were inconsistent with his testimony, and the proof of them would have tended to discredit the evidence he gave. I do not see how this evidence could properly have been excluded. The proof of contradictory statements made by a witness in such a case cannot of course be given, unless a foundation is laid for its introduction, and for the purpose of laying such foundation, the evidence was clearly admissible. The question to Krewson, whether at the time he claimed to have marked the wood "K. & Co." he did not mark the other wood in that vicinity "K. & Co." which he knew belonged to Aulauff Brothers, and which he afterwards gave up to their assignee, would ordinarily have been proper upon cross-examination. It was not very important, however, and the presiding judge may have seen some good reason for limiting the inquiry. A good deal of latitude should be allowed upon cross-examination, and I can see no good reason for excluding the evidence offered, though I would not say that the ruling was error.

The next ground of error—that the court erred in refusing to give the written instructions submitted, etc.—is not well founded. That assignment relates to the following instructions requested by the appellants' counsel to be given to the jury, to wit: "If the said Gotardi & Co. agreed with the plaintiffs to sell them what wood they had cut on the De Launey Place at a stipulated price per cord delivered at the railroad track, and the wood was never delivered by them according to said agreement at said track, the property in the wood never passed to the plaintiffs, but the property and risk remained in said Gotardi & Co., and the plaintiff cannot recover, even though you should find from the evidence that the said Gotardi & Co. cut the wood on their own responsibility, and not for the Aulauff Brothers, as claimed by the de-

fendants." The instruction called for too much. If the agreement referred to in the instruction had been the only arrangement between the said parties in regard to the sale of the wood, the respondents' property in the wood, and consequent right to recover in the action, would have depended upon a delivery of the wood in accordance with the terms of the agreement; but evidence was given tending to show that the agreement was changed, and that the respondents were to receive it upon the ground where it was cut, and that the quantity was estimated and agreed upon. In that case, the title to the property may have been passed without any delivery at the railroad track, as provided in the original agreement.

The next ground of error relates to the giving instructions to the jury by the court that were excepted to by the appellants' counsel. The only instruction to which this assignment can apply is the following: "That if the evidence in this case shows that the plaintiffs, J. W. Krewson & Co., were in possession of the property in dispute, and the property was taken from their possession by the defendants, then, unless said defendants took possession thereof as Aulauff's property by direction from Aulauff, this defense could not defeat the right of the plaintiffs to recover in this action." Why this instruction was given I am at a loss to know. The case was not tried upon any such theory. The main questions in it, as before stated, were the fact as to whom the wood was cut for, and under what circumstances and conditions it was cut. If Gotardi and his associates were members of the company known as Maria & Co., and the wood in the tree was bought by Aulauff Brothers, and Maria & Co. were employed to cut it for them, Gotardi's attempt to sell it to the respondents gave them no title to it, nor, in my opinion, did the attempted delivery of it to the respondents in the manner testified to by said J. W. Krewson,

invest the respondents with such a possession as would enable them to recover against the appellants for its conversion. Such delivery would only be a constructive delivery. The wood remained in the woods where it was cut; no actual transfer of it took place; nor was anything done in regard to it beyond the marking of a part of the piles. Said respondent says in his testimony that he never went to the premises to look after it after he marked it. If Gotardi's company had owned the wood, the delivery would have been sufficient to transfer the possession, as the legal title would have drawn after it the possession, but if it belonged to Aulauff Brothers, then the transaction had no such effect. If the respondents had taken the wood and hauled it to the railroad, they might then have had such a possession of it as would have enabled them to maintain an action against a stranger for its conversion, whether the sale transferred to them the legal title or not; but a mere constructive delivery, by one who had no right, would not be sufficient in my opinion.

Again, the instruction cannot be sustained in any view. It went too far. The jury were told that if the respondents were in possession of the wood, and if it were taken from their possession by the appellants, then, unless they took possession of it as Aulauff's property *by direction from Aulauffs,* the appellants' defense could not defeat the right of the respondents to recover in the action. The testimony of Deputy Sheriff Slocum, called out by the respondents, showed that the wood was left with Aulauff Brothers after being attached. The jury might have infered from that that Aulauff Brothers consented to the levy; but they were required to find that Aulauffs directed it to enable the defense to defeat the action. I am not able to concur in that view. I think, under the evidence of the case as shown by the bill of

exceptions, the defense was made out whenever it was established that Gotardi & Co. did not own the wood, and that Aulauff Brothers did.

LORD, J., concurs in the result.