(May 8, 1907.)

## J. M. PRATT, Respondent, v. NORTHERN PACIFIC EX-PRESS COMPANY, Appellant.

[90 Pac. 341.]

LIABILITY OF COMMON CARRIER—OWNERSHIP OF PROPERTY CONSIGNED—RIGHT OF CONSIGNEE TO SUE FOR ITS RECOVERY—CONTRACT OF CONSIGNMENT.

1. Where A is indebted to B, and it is understood that the former shall send a sum of money to the latter in payment of his debt, and A deposits the money in defendant's express office, addressed and directed to B at another office on its line of transportation, and takes defendant's receipt therefor, and gives the defendant no other or further instructions as to the ownership or right of possession of the property, and imposes no condition or restriction as to the delivery thereof, upon failure and refusal of the defendant to deliver the money to B, in the absence of any change of instructions by or on the part of A and of any demand made by A for the redelivery thereof, B may maintain an action against the defendant, the carrier, for the possession thereof.

2. Where the shipper delivers his property to the carrier marked and addressed to another person as consignee, and gives the carrier no other or further notice than that to be presumed and inferred from the act of consignment, the law will presume the contract for transportation to have been made for and on behalf of the consignee, and that the latter is the owner of the property and entitled to its possession and to sue therefor.

3. Where the property is received on an unconditional and unrestricted consignment, the carrier not only *may*, but *must*, treat the consignee as the absolute owner until he receives notice to the contrary.

4. Where A delivers property to an express company with direction to deliver the same to B, he thereby vests the rights of possession in B, and in the absence of any different or contrary instructions prior to B's demand for the property, the latter will be entitled to demand, sue for and receive the same.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District for the County of Nez Perce.   Hon. Edgar C. Steele, Judge.

Action by the plaintiff to recover the sum of $660 from the defendant on account of a consignment to him of that sum of money. Judgment for the plaintiff and defendant appeals. *Affirmed.*

James E. Babb, for Appellant.

While a consignee is *prima facie,* in the absence of any explanation, the owner of the consignment, this presumption is rebutted on a showing that the consignment is of money sent by a debtor to a creditor for payment upon the indebtedness; where in such case the money is lost in transit or is not delivered to the consignee, the title remains in the sender, and he remains liable for his entire indebtedness to the consignee without any right of credit on account of having sent the money which was lost. The money having been sent by him of his own motion without showing that the consignee had designated the express company as the agent of consignee for carrying the money, the express company became and remained the agent of the sender, carrying at the risk of the sender. In such a case the right of action against the express company is solely in the sender, and the consignee can maintain no action without having alleged an assignment of the right of action from the sender. (*Bernstein v. Union Express Co.,* 40 Ohio St. 451; 3 Hutchinson on Carriers, 3d ed., sec. 1318; *Ogden v. Coddington,* 2 E. D. Smith, 317; *Snee v. Prescott* (1743), 1 Atk. 245, 248; *Dawes v. Peck* (1799), 8 D. & E. 330; *Coats v. Chaplin,* 3 Ad. & El., N. S., 483, and cases cited; *Holbrook v. Wright,* 24 Wend. 169, 35 Am. Dec. 607; *Hinsdale v. Weed,* 5 Denio, 172; *Price v. Powell,* 3 Const. 322; *Coombs v. Bristol etc. Ry. Co.,* 3 Hurl. & N. 510; Hale on Bailments and Carriers, p. 548.)

I. N. Smith and John Green, for Respondent.

In the absence of *mala fides*—which is not here urged— plaintiff's *prima facie* title from possession may not be rebutted by the debt or by evidence that the title is in some other party, so long as he is protected against the claim of such party, by the payment of the judgment which may be

rendered against him.    (*Dyer v. Sebrell,* 135 Cal. 597, 67 Pac.
1036; *Giselman v. Starr,* 106 Cal. 651, 40 Pac. 8; *Bank v. Per-
kins,* 29 N. Y. 554, 86 Am. Dec. 332; *Ellicott v. Martin,* 6
Md. 509, 61 Am. Dec. 327.)

The consignee of goods may maintain an action against
a common carrier for their loss, although another person was
the owner of them, or was jointly interested in them with
him.    (*Griffith v. Ingledew,* 6 Serg. & R. 429, 9 Am. Dec.
444; *Southern Express Co. v. Armstead,* 50 Ala. 350.)

In the bill of lading it affirmatively appears that the con-
tract was made for the benefit of the consignee (plaintiff).
(6 Cyc. 511.)    This gives him the right to maintain this ac-
tion.    (7 Am. & Eng. Ency. of Law, 2d ed., 220; 12 Am. &
Eng. Ency. of Law, 2d ed., 558.)

AILSHIE, C. J.—This action was prosecuted by the plain-
tiff against the Northern Pacific Express Company for the
recovery of the sum of $660, consigned by one J. W. Pratt
from the defendant's office at Culdesac, Idaho, to the plain-
tiff at Lewiston, Idaho.    On the twenty-third day of Novem-
ber, 1904, the consignor, J. W. Pratt, delivered to the defend-
ant's agent at its office in Culdesac, a sack or package for
shipment containing $660, lawful money of the United States,
and prepaid the charges thereon, and the package was ad-
dressed and directed to the plaintiff at Lewiston.    The de-
fendant's agent issued to the consignor a receipt, the principal
part of which is as follows:

"Culdesac, Idaho, November 23, 1904.

"Received of J. W. Pratt 1 sk. said to contain money valued
at six hundred and sixty and no-100 dollars, and marked
J. M. Pratt, Lewiston, Idaho.    Prepaid 50 cents, which we
undertake to forward to our agency nearest and most con-
venient to destination only," etc.

The express company neglected and refused to deliver this
money to the consignee, and after written demand was made
upon the agent at Lewiston, and refusal to pay, this action
was instituted.    It seems from the evidence that the night
after the deposit of this money with the express company, its

office was robbed and this money, together with other property, was taken therefrom. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and the demurrer was overruled. The defendant then answered putting in issue all the material allegations of plaintiff's complaint. After the evidence was all in, the defendant moved for a nonsuit on various grounds, the principal of which is that the plaintiff, the consignee, was not the owner of the money consigned, and had no property therein and could not maintain this action against the company, and that the only person who had any interest in the property or incurred any risk in the shipment was the consignor, and that he alone could sue. This motion was overruled. The case was submitted to the jury and they returned a verdict in favor of the plaintiff. This appeal is from the judgment and an order denying a motion for a new trial.

The only proposition presented by the appellant on this appeal is that the consignor was the proper party to sue, and that the consignee cannot maintain his action herein. The respondent controverts this proposition, but, in the first place, contends that the defendant waived the point by failure to demur under section 4174, Revised Statutes. He contends that this question should have been raised by demurrer to the complaint on the ground "that the plaintiff has not the legal capacity to sue," and that by failure to do so under section 4178, it is precluded from thereafter urging that objection. We do not think this point is well taken. A demurrer on the grounds of want of legal capacity to sue, it seems to us, must relate to some legal disability on the part of the plaintiff to prosecute and maintain his action. As said by Pomeroy in his Code Remedies (fourth edition), page 180, this disability must be "such as infancy, coverture, idiocy and the like, and not the absence of facts sufficient to constitute a cause of action." A plaintiff may have legal capacity to sue and to prosecute his action against the defendant, but if he does not have a cause of action, he certainly cannot recover. (*Wetmore v. San Francisco,* 44 Cal. 294; *Robinson v. Peru*

*Plow & Wheel Co.,* 1 Okla. 140, 31 Pac. 988; *Krewson v. Perdon,* 13 Or. 563, 11 Pac. 281.)   The demurrer in this case was properly overruled, for the reason that the complaint stated facts sufficient to constitute a cause of action, irrespective of the question as to whether the ownership of the property sued for was in the consignor or consignee.   It is pretty generally agreed among the courts and text-writers that the presumption in the first instance is that the consignee is the owner of the property and entitled to maintain an action either for damages sustained or for loss of the property by the carrier.   Justice McClain of the supreme court of Iowa, in his article on Carriers (6 Cyc. 510), says: "The presumption that title to the goods passes to the consignee on delivery to the carrier will sustain an action by the consignee as owner, either in tort or for breach of contract, the contract of shipment being presumed to have been made for his benefit." This, we think, states the generally accepted rule of law governing such cases.   It therefore follows that if the plaintiff must fail in his action, he must do so upon the facts disclosed upon the trial rather than upon demurrer to his complaint.

The only evidence produced upon the trial touching the ownership and right of possession in this property is that given by the consignor and consignee, and is as follows: The consignor, J. W. Pratt, testified: "I was sending this money to my brother for payment on some money I owed him." The consignee, the plaintiff in this case, testifies on cross-examination as follows: "Q. Do you know why any money was being sent you at that time by your brother?   A. Why it was sent to me?   Q. Yes.   A. He owed me this money. Q. What money is that?   A. The money he was to send me. Q. If I understand you, any money that was being sent, if he sent any, was being sent in payment of an indebtedness he owed you?   A. Yes, sir."   At the trial plaintiff produced the receipt issued by defendant's agent at Culdesac, proved a demand made on the company for the money after they had been given a reasonable time for the delivery of the same, and produced the consignor as a witness on his behalf.   It was also shown that the agent at Culdesac had stated to plaintiff's attorney

that the office had been robbed and this money had been stolen; that the agent at Lewiston refused to pay the money, and also stated to plaintiff's attorney that he understood the office at Culdesac had been robbed and this money stolen. Under this state of facts the question arises as to whether the plaintiff can maintain this action or it should have been prosecuted in the name of the shipper. This question seems to have disturbed the judicial mind in England at a very early date, even before transportation by land had become very general. In *Griffith v. Engledew,* 6 Serg. & R. (Pa.) 429, 9 Am. Dec. 444, the supreme court of Pennsylvania divided over the application of this principle of law, and in the majority and dissenting opinions will be found an interesting review of the early English authorities on the subject. The majority of the court held that although the title to the goods remained in the consignor, still the contract was made for the benefit of the consignee and that he might sue upon it, and that the carrier, having received the goods under agreement to deliver them to the consignee, could not be heard to question the latter's right to maintain an action for their recovery. In later years the English courts seem to have held that the action can only be maintained by the owner of the goods, property or money intrusted to the carrier. In support of this view, the case of *Coombs v. Bristol etc. Ry. Co.,* 3 Hurl. & N. 510, determined in the court of exchequer in 1858, will be found very interesting and instructive.

In this country the point has been variously determined, though perhaps there is not such a great conflict when the facts of the cases are taken into consideration as would at first appear. Where the consignor has sued, the courts have generally held that he was a proper party and could maintain his action, and where the consignee has sued, they have generally sustained him.

In *Ogden v. Coddington,* 2 E. D. Smith, 317, the court of common pleas of New York, in 1854, said: "I think the plaintiffs are right in saying that a mere consignee cannot maintain an action for the negligence of the carrier, or the breach of the carrier's contract. Such right of action belongs to the

owner of the goods.   The contract of the carrier, as evidenced by the bill of lading, is made with the shipper.   If the shipper is owner, or has a special property in the goods, he may sue thereon.   If the consignee is owner, then the shipper is regarded as his agent, and the contract being made for the owner's benefit he may sue thereon, in virtue of his property in the goods and his exclusive beneficial interest in the contract.''   In 1873 the same question arose in Alabama, in the case of *Southern Express Co. v. Armstead,* 50 Ala. 350, and the court there said: "The consignee of goods has the right to sue for their loss by the carrier, notwithstanding another party may be the owner of them.   The obligation is to deliver to him.   Generally, the property vests in him by the mere delivery to the carrier.   Although the absolute or general owner of personal property may support an action for any injury thereto if he have the right of immediate possession, this does not necessarily devest the right of the consignee to sue, notwithstanding he has never had the actual possession.''

The case nearest in point with the one at bar as to the facts involved is that of *Bernstine v. Express Co.,* 40 Ohio St. 451, determined by the supreme court of Ohio in 1884.   The point there determined is stated in the syllabus as follows: "Where a creditor, living at a distance from his debtor, requests the payment of the debt without giving specific instructions as to how the money shall be sent, and the debtor sends it by an express company, and it is lost *in transitu,* the debtor may maintain an action against the company for its recovery.''

In the latest edition of Hutchinson on Carriers, volume 3, section 1317, the author in discussing the subject, "When a Consignee may Sue,'' says: "And it may be stated as a well-settled rule that if the goods are delivered to the carrier on behalf of the consignee, and at his request or by his direction, either express or implied, and no other fact appears, the legal presumption will be that the property in the goods immediately on such delivery becomes vested in him, and that he is the proper party to bring an action against the carrier, either *in assumpsit* in his own name upon the contract with the consignor as his agent, or in case for the breach of duty on

the part of the carrier, or in the name of the agent for his use upon the special contract of affreightment. But, after all, the question whether the property in the goods has passed to the consignee by a delivery to the carrier will depend upon the intention of the transaction, and this may always be shown. And if the consignee, after the goods have been destroyed in transit, purchases them from the owner, it has been held that such consignee may maintain an action in his own name against the carrier for damages. And the fact that the goods were destroyed before the consignee's purchase was held to make no difference.''

In 6 Cyc., page 468, Justice McClain, the author of the text, in considering the question as to whom delivery may be made by the carrier, says: ''Where the carrier receives the goods under a contract, either express, or implied from the marks on the goods, to deliver them to a person named, without any reservation of power of disposal by the consignor, then the delivery to such person completes the contract and relieves the carrier from further liability. This rests on the assumption which the carrier is authorized to entertain that the title to the goods passes to the consignee on delivery to the carrier.'' (See, also, 7 Am. & Eng. Ency. of Law, 220, and 12 Am. & Eng. Ency. of Law, 558.) It will be seen that the authorities quite generally agree that where the shipper delivers his property to the carrier, marked and addressed to another person as consignee, and gives the carrier no other or further notice than that to be presumed and inferred from the act of consignment, the law will presume the contract for transportation to have been made for and on behalf of the consignee, and that the consignee is the owner of the property and entitled to its possession and to sue therefor. It should also be remembered that where the shipper delivers the property over to the carrier without any special instructions as to its ownership or its delivery on any condition, the consignee becomes immediately entitled to the possession of the property, and may demand and lawfully receive it forthwith from the carrier, and that the carrier will be justified in delivering it to the consignee at any point on its line of transportation.    (2

Hutchinson on Carriers, sec. 735; *Southern Ex. Co. v. Williams,* 99 Ga. 482, 27 S. E. 743.)

In the case at bar the plaintiff might have lawfully demanded this sack of money from the express agent immediately after its delivery by the consignor, and the express company would have been legally justified in delivering it to the plaintiff then and there or at any point along its line of transportation thereafter; *provided,* however, that the consignor had not in the meanwhile given different or contrary directions to the express company. In *Bernstine v. Express Company, supra,* the creditors had written their debtor to "send them some money," but did not direct him as to the means he should employ in sending it. The court held that it was the duty of the debtor to pay his creditor in person, and that the money while in the hands of the express company was there at the risk of the debtor, and that the loss primarily fell upon the debtor; that the deposit of the money with the express company did not pay the debt and did not relieve the consignor of his liability to his creditors, and that therefore the debtor was a proper party to sue for its recovery. It should be borne in mind, however, that the Ohio court did not hold that under the facts of that case the creditor could not have maintained an action against the carrier. It is true it did hold that the consignor could maintain the action. Had the debtor made no demand of the carrier and the creditors had sued, we are inclined to the opinion that the court would have sustained them in their action. In the case at bar the consignor was indebted to his brother and was sending him this money in payment thereof. The consignor said this was "the money he (the debtor) was to send me." It is therefore apparent from the evidence that J. W. Pratt was to send $660 from Culdesac to J. M. Pratt, the plaintiff, at Lewiston. Now, then, the record is silent as to the manner of the sending or the means he was to employ in sending that money. If the law presumes in the first instance that the consignee was the owner of this money, and the carrier was authorized and directed to deliver it to the consignee, and this was money it had been agreed between debtor and creditor

should be sent to the creditor, then, it seems to us, that the fact of the consignee appearing in an action prosecuted against the express company and producing the company's receipt for the money and the consignor as a witness in his behalf, will justify the further conclusion and presumption that the manner of shipment and means employed were also such as had been agreed upon between them. In other words, with the evidence before us as produced in this case, showing that this property was to be sent by the consignor to the consignee, and that the consignment was general in terms, and such as would lead the carrier to the legal conclusion that both the title and right of possession was thereby vested in the plaintiff, and there being no evidence as to the instructions by the consignee as to the means of transmission of the fund, it appears to us more reasonable to infer that the means employed was as agreed upon or as directed than otherwise. The express company is liable to some person for this money, and it can make no difference to the company whether it pay the consignee or the consignor; the only concern it has is to see that it is protected from payment a second time. This judgment in favor of the plaintiff is clearly a bar to the consignor ever maintaining an action against the company for a recovery on the same contract. When he delivered the property to the express company he directed them to deliver it to the plaintiff. He thereby vested in the plaintiff an immediate right to the possession of the property. He never thereafter changed his directions or instructions to the company, and has never demanded of the company that they surrender the property to him or pay damages for a failure to do so. If after the loss of the property, as in this case, the consignee demands its delivery or the value thereof, and upon failure by the carrier to deliver, commences his action prior to any change of instructions on the part of the consignor or demand by him for the property, the consignor should thereafter be precluded from maintaining an action for its recovery or value. Indeed, where the property is received on an unconditional and unrestricted consignment, the carrier not only *may*, but *must*, treat the consignee as the absolute owner until

he receives notice to the contrary.   (1 Hutchinson on Carriers, sec. 177; *Sonia Cotton Oil Co. v. Steamer "Red River,"* 106 La. 42, 87 Am. St. Rep. 294, 30 South. 303.)

It appears to us that considerable fallacy and illogical reasoning has crept into some of the cases to which our attention has been called, and this seems to be due largely to the fact that in these cases the question has been treated with a view to the relation existing between the shipper and consignee in reference to the ownership and right of possession of the property, rather than considering the true question of the relation the carrier sustains to each of these parties respectively.   Any difference or diversity of interest that may arise between the consignor and consignee can in no respect concern the carrier so long as it is protected against responding for the property more than once.   The ownership may be general and unqualified, or special and limited; the right of possession may be absolute or contingent; in either instance the interest would be sufficient on which to found an action in the absence of the assertion of a superior right in another.   The success of the demand and claim of one apparently entitled to possession as against the carrier will relieve the carrier from further responsibility even to one having a better right.   Under our statute (Rev. Stats., sec. 4113; *First Nat. Bank of Hailey v. Bews,* 3 Idaho, 486, 31 Pac. 816), if there is any question or doubt as to the party to whom the carrier is liable, all necessary parties may be brought in and required to set up their interests, and thereby determine the respective rights and effectually protect the defendant from the possibility of the assertion of any further claim by other parties.   So in the case at bar, the express company might have had the consignor brought in as a party to set up any interest or claim he might have.   We think the plaintiff has shown sufficient interest in the subject of the action herein to sustain the verdict and judgment in his favor.

No other assignment of error has been argued by appellant, and we take it that there is none that merits consideration.   We are not unmindful of the fact that some things we have said herein are in conflict with what is perhaps the

weight of authority, but of the substantial justice which our conclusions reach we have no doubt. If our reasoning should appear to any illogical, it is in no worse plight than the reasoning of some of the cases we have examined as the same presents itself to our minds. The judgment is affirmed, with costs in favor of the respondent.

Sullivan, J., concurs.