Argued April 3, reversed and suit dismissed April 24, 1917.

## OREGON ART TILE CO. *v.* HEGELE.

(164 Pac. 548.)

**Appeal and Error—Assignments of Error.**

1.  Assignments of error, containing a statement of what was done, plus the complaints made by appellants, are sufficiently specific, definite and certain.

**Evidence—Secondary Evidence—Preliminary Proof.**

2.  Unsworn declarations of counsel of giving of notice to produce writings for use at the trial will not supply the requisite preliminary proof for introduction under Sections 712, 782, L. O. L., of secondary evidence of their contents.

**Discovery—Failure to Permit Inspection—Presumption—Preliminary Proof.**

3.  Unsworn statement of plaintiff's counsel of neglect or refusal of defendants to obey an order to give plaintiff an inspection of a writing is not the requisite preliminary proof to make available the presumption, under Section 533, L. O. L., that the terms of the writing are as alleged by plaintiff.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

This is a suit to foreclose a claim of lien for labor and material.   H. W. Hegele was a doctor and occupied office rooms over a theatre in a building in Portland known as the Empress Theatre Building and

owned by the Empress Theatre Company. Hegele caused the Oregon Art Tile Company, a corporation, to place tiling on the floors and a part way up the partitions of some of the rooms so that they could be used for different kinds of baths employed by Hegele in his practice. Most of the work was done pursuant to a contract which fixed $830 as the price to be paid, but in addition to this the Oregon Art Tile Company performed extra work which the plaintiff claims was reasonably worth $95.75. Hegele paid only $350, and on September 10, 1914, the Oregon Art Tile Company filed a claim of lien for $575.75 on the "Empress Theatre Building constructed upon lots three (3) and four (4) and the east half of lots five (5) and six (6) and the west half of lot six (6), block two hundred and eleven (211)" in Portland.

The complaint in this suit alleges that the Oregon Art Tile Company contracted with H. W. Hegele "for doing the repair and construction work and furnishing the material therefor in and to a certain portion" of the Empress Theatre Building "which said portion is more particularly known and described as the offices of the said H. W. Hegele"; and, further, that "at the special instance and request of the said defendant, H. W. Hegele, during the progress of said work, plaintiff performed extra labor in and upon the said Empress Theatre Building and more particularly in the defendant, H. W. Hegele's, offices within the said building, and furnished extra material not called for in said contract, to be used in and which was used in the alteration, repair and construction of the said offices of defendant, H. W. Hegele, within the said building"; that "the contract price for said alteration, repair and construction work" upon the offices was $830 and that the "reasonable value of said extra material and labor" is $95.75; that no payments

except $350 have been made and that a balance of $575.75 is due; that "on the 10th day of September, 1914, and within sixty days from the completion of the said work, labor and material performed in and upon said Empress Theatre Building" the plaintiff filed a claim of lien, a copy of which was attached to and made a part of the complaint.

The defendants H. W. Hegele and the Empress Theatre Company filed a joint demurrer alleging that the complaint did not state facts sufficient to constitute a cause of suit. The demurrer was overruled and the defendants then filed a joint answer denying "every allegation" of the complaint and averring, as a separate defense, that the labor performed and materials furnished by plaintiff "are of such inferior character and so carelessly and negligently performed that the same were and are worthless, and plaintiff is not entitled to recover compensation therefor."

At the ensuing trial which occurred on October 14, 1915, the defendants declined to offer any evidence, but, when the plaintiff rested, the defendants contented themselves by orally moving for a dismissal of the suit for certain specified reasons. This oral motion was supplemented on October 23, 1915, by a written motion to dismiss which sets forth in detail all the reasons then assigned and now relied upon by the defendants for a dismissal. Subsequently on December 9, 1915, the court signed a judgment "against H. W. Hegele and the Empress Theatre Company" for a specified sum and a decree foreclosing the lien "upon the real property" already described "including the building situated thereon." Both defendants appealed.    REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the names of *Messrs. Bronaugh & Bronaugh* and *Mr. Franklin P. Korell,* with an oral argument by *Mr. Korell.*

For respondent there was a brief over the names of *Messrs. Lewis & Lewis* and *Mr. P. E. Newell,* with oral arguments by *Mr. Arthur H. Lewis* and *Mr. Newell.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. Attention is first directed to the assignments of error. The plaintiff insists that the defendants are precluded from raising some of the questions discussed in their brief for the reason that the assignments are too indefinite and general and because they merely state facts without complaining of any errors.

Assignment No. (1) states that:

"The court erred in allowing witness Finnegan to testify over appellants' objection relative to the contents of a written lease as follows, to wit":

And then follows a transcript of the record showing the question asked, the objection made by defendants, the ruling of the court, and the answer of the witness.

Assignment No. (2) reads thus:

"The court erred in refusing to strike at appellants' request the testimony of witness Finnegan relative to the contents of said lease as follows."

The motion to strike and the reasons assigned for it are then transcribed in full.

Assignment No. (3) recites that:

"The court erred in refusing to dismiss plaintiff's complaint upon motion at the conclusion of plaintiff's testimony."

Assignment No. (4) is general in its terms for it merely states in substance that the court erred in rendering the judgment and decree appealed from.

Rule 11 promulgated by this court (56 Or. 618, 117 Pac. x) requires that the errors relied upon for a reversal or modification of the order, judgment or decree appealed from shall be set out briefly and concisely; and rule 12 provides that no questions will be examined or considered except those going to the jurisdiction of the court, or when the pleading does not state facts sufficient to constitute a cause of action or defense, or those arising upon the assignments of error: 56 Or. 621 (117 Pac. xi).

If all the questions discussed by appellants were predicated upon assignment No. (4) quite a different question would be presented. Most of the points made by the defendants arise out of the first three assignments of error; and each of these assignments contains a statement of what was done plus the complaint made by defendants. Assignments (1) and (2) are far from being indefinite or general; but, on the contrary, they are unusually specific and complete, and if they offend at all it is because they are not brief and concise. Assignment No. (3) arises out of the refusal of the court to allow a motion to dismiss. A particular motion is designated and no doubt can exist as to the motion referred to. Upon examination of the record of the motion it will be ascertained that the defendants not only moved for a dismissal of the suit but they also stated their reasons for the motion. The plaintiff relies upon two Oregon precedents both of which were actions at law and one of them arose out of a former statute, not now in effect, requiring that the assignment of errors be made in the notice of appeal when an appeal was taken from the judg-

ment in an action at law; but if the appeal was from
a decree it was not necessary to specify the grounds
of error in the notice of appeal: 1 Hill's Ann. Laws
(1887), § 537; 1 Hill's Ann. Laws (1892), § 537.
Under the terms of that statute when an appeal was
taken from a judgment in an action at law it was held
that the requirement concerning the specifications of
errors was jurisdictional and consequently a failure
to follow the statute was disastrous: *Deuch* v. *Seaside
Lodge,* 26 Or. 385 (38 Pac. 337); *Wagner* v. *Portland,*
40 Or. 389, 391 (60 Pac. 985, 67 Pac. 300); when, how-
ever, the requirement concerning the assignment of
errors is based upon a rule of the court instead of a
mandatory statute, and when it is not jurisdictional
a failure to assign errors in the abstract may be reme-
died, or as said in *Fleischner* v. *Bank of McMinnville,*
36 Or. 553, 555 (54 Pac. 884, 60 Pac. 603, 61 Pac. 345):
"it may, under certain contingencies, be excused en-
tirely." Here, however, there was no failure; but
on the contrary, assignments were made and when the
assignments are viewed in the light of applicable pre-
cedents it will be ascertained that they are sufficiently
definite and certain to enable a presentation of all the
questions discussed by the defendants: *Krewson &
Co.* v. *Purdom,* 13 Or. 563, 570, 571 (11 Pac. 281);
*Bridal Veil Lbr. Co.* v. *Johnson,* 25 Or. 105, 106, 107
(34 Pac. 1026); *Medynski* v. *Theiss,* 36 Or. 397, 400
(59 Pac. 871).

The testimony of James B. Finnegan occupies an
important place in this appeal. The plaintiff only
called two witnesses: J. W. Batcheller, manager of the
Oregon Art Tile Company, and James B. Finnegan.
The defendants did not offer any evidence and conse-
quently there is no evidence to support the contro-
verted allegations of the complaint, except the testi-

mony of those two witnesses. The record is utterly devoid of any evidence showing that the Empress Theatre Company had actual knowledge of the work done for Hegele, and there is no evidence whatever upon which it can be claimed that the Empress Theatre Company is bound by the acts of Hegele as an agent of the company unless it can be said that the terms of the lease bound the Empress Theatre Company. The importance of the testimony given by Finnegan and objected to by the defendants can be appreciated when it is stated that there is no evidence concerning the terms of the lease, which it is conceded was in writing, except the oral testimony of Finnegan.

Pursuant to the provisions of Section 533, L. O. L., the plaintiff filed a motion on October 9, 1915, "for an order requiring the defendants * * to furnish plaintiff * * an inspection of that certain lease by and between" the defendants; and on the same day the court made an order which, after reciting that one copy of the lease is in the custody of Hegele and another in the charge of the Empress Theatre Company or its attorney W. M. Davis, directs that Hegele shall exhibit his copy of the lease at his office at 11 A. M. on October 11, 1915, so that the plaintiff can inspect the lease and take a copy of it. The order further directs that "W. M. Davis and the Empress Theatre Company show and exhibit to plaintiff its copy" and allow plaintiff to take a copy at 10 A. M. on October 11, 1915.

Immediately upon examining the witness Batcheller, counsel for plaintiff addressing himself to counsel for defendants asked: "Have you at this time the lease between Dr. Hegele and the Empress Theatre Building?" Counsel for defendants responded thus:

"I told you Mr. Newell, at the time that you made this demand on me that the only copy of this lease

that could be found at the time, or that I could give you any information about its location, was in the office of the Empress Theatre Building at Seattle, and that, by the serving of a subpoena on one of its officers here you might be able to get them to bring that down. But I have here this [indicating] which I exhibited to you as a copy of that lease.''

Addressing the court, the counsel for plaintiff then stated:

''Having made formal demand and secured an order from the court for the lease existing between Dr. Hegele and the Empress Theatre Company, and having not secured it, we have at this time evidence of a secondary nature to introduce showing the covenants contained in the lease between Dr. Hegele and the Empress Theatre Company.''

Upon the conclusion of the last quoted statement James B. Finnegan was called as a witness and permitted to testify that at about the time of the completion of the work done by the plaintiff he had occasion to examine the written lease and that it was shown to him by W. M. Davis. Continuing, the witness testified thus:

''There was one condition in the lease, written in long-hand, the *exact wording* of it I cannot recall, but I remember it very distinctly, which provided that any improvement made by the lessee should be retained and kept by the lessors upon the termination of the lease.''

When asked ''What was the length of time for the lease to run?'' the witness said that he did not ''recall the terms of the lease, the period of it nor the consideration.''

There is nothing to show whether Hegele refused to exhibit any lease that he may have had at the time and place fixed in the order nor is there any intimation

that W. M. Davis refused to permit an inspection of any copy that he may have had. We infer from the transcript that counsel for the plaintiff called at the office of one of the attorneys for the defendants and was shown "a copy of that lease." This inference, however, is only supported by two statements made by counsel for the defendants supplemented by one statement made to the court by counsel for plaintiff. Counsel for defendants excused a failure to exhibit the original lease by saying that when he exhibited the copy in his office he told counsel for plaintiff that:

"It was an identical copy of the lease itself * * and he expressed a satisfaction with what he saw, and because of the fact that he did express his satisfaction I let it go at that and made no further efforts."

It must be added, however, that counsel for plaintiff stated to the court that he told counsel for the defendants that he was not satisfied. There is no evidence to indicate the date of the occurrence in the office of counsel for the defendants.

2. The question arising out of what occurred at the trial relative to the terms of the lease presents itself in two phases: (1) Whether the testimony of Finnegan was competent secondary evidence; and (2) whether the plaintiff is entitled to avail itself of any presumption concerning the contents of the lease. These two aspects of the question result from Sections 712, 782 and 533, L. O. L., which are here set out.

Section 712: "There shall be no evidence of the contents of a writing, other than the writing itself, except in the following cases:—

"1. When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in Section 782."

Section 782: ''The original writing shall be produced and proved except as provided in Section 712. If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents of the writing may be proved as in case of its loss; but the notice to produce it is not necessary where the writing itself is a notice, or where it has been wrongfully obtained or withheld by the adverse party.''

Section 533: ''The court or judge thereof, while an action or suit is pending, may order either party to give the other, within a specified time, an inspection and copy, or permission to take a copy of any book, document, or paper in his possession, or under his control, containing evidence or matters relating to the merits of the action or suit, or the defense therein. If obedience to the order be neglected or refused, the court may exclude the book, document, or paper from being given in evidence, or if wanted as evidence by the party applying therefor, may direct the jury to presume it to be such as he alleges it to be; and the court may also punish the party so neglecting or refusing as for a contempt. This section is not to be construed to prevent a party from compelling another to produce books, documents, or papers, when he is examined as a witness.''

The penalty imposed for a failure to produce a writing at a trial after reasonable notice is the granting of permission to offer secondary evidence, while a refusal or neglect to obey an order for an inspection and copy gives rise to a presumption. Sections 712 and 782 furnish authority for secondary evidence; but Section 533 goes no further than to authorize a presumption. There is no intimation in the record that any notice contemplated by Section 782 was given; and, furthermore, even if the plaintiff did claim that notice to produce the lease for use at the trial was given under Section 782 the unsworn declarations of

counsel would not supply the requisite preliminary proof: *Reimers* v. *Pierson,* 58 Or. 86, 90 (113 Pac. 436). There are no circumstances bringing the lease within any of the exceptions, whether expressed by the statute or added by judicial construction, dispensing with the necessity of a notice to produce the lease. The evidence given by Finnegan concerning the contents of the lease was incompetent secondary evidence and since his was the only testimony concerning the contents of the lease it necessarily follows that there is a total lack of evidence as to the terms of the lease unless the plaintiff can avail itself of the presumption permitted by Section 533, L. O. L.

3. The plaintiff claims that the terms of the lease make Hegele the agent of the Empress Theatre Company and that the lessor is therefore bound by the acts of the lessee. For the purposes of this discussion we shall assume, without deciding, that notwithstanding the wording of Section 533 the statute applies to suits as well as actions, that the words "may direct" mean "must direct," and that the presumption must be considered by the trier of the facts, whether such trier be a judge or a jury. The presumption permitted by the statute is created only when obedience to the order of the court or judge is "neglected or refused." Before the Oregon Art Tile Company can invoke the aid of any presumption arising out of Section 533, L. O. L., it must first show that the Empress Theatre Company "neglected or refused" to obey the order of the court or judge. The burden rests upon the plaintiff to submit the requisite preliminary proof and as said in *Reimers* v. *Pierson,* 58 Or. 86, 90 (113 Pac. 436), when discussing Section 782, L. O. L., "the unsworn declarations of counsel do not constitute such proof." The plaintiff can of course claim the

benefit of the declarations of counsel for the adverse parties to the extent that such declarations constitute admissions, but there are no admissions in the record which show that the defendants either neglected or refused to obey the order of the court. Counsel for the defendants admitted that he exhibited to counsel for the plaintiff a paper which the former claimed was a copy of the lease. There is nothing in the record except the unsworn contradictory declarations of opposing counsel from which to determine whether the paper was in truth a copy or whether counsel for the plaintiff was or was not satisfied with the paper at the time of the inspection. If the circumstances surrounding the exhibition and inspection of the paper were as declared by counsel for the defendants, the presumption provided for in Section 533, L. O. L., would not be created; but if the circumstances were as declared by counsel for the plaintiff a different result might follow. There is no legal evidence to show that the defendants either neglected or refused obedience to the order for an inspection of the lease, and consequently there is no available presumption that the terms of the lease made Hegele the agent of the Empress Theatre Company as contended by the plaintiff. In brief, there is neither competent evidence of the terms of the lease nor is there competent evidence upon which to base any presumption concerning the provisions of the lease; and consequently there is nothing to show that the Empress Theatre Company had any knowledge of the work done or that Hegele was the actual or constructive agent of the Empress Theatre Company.

Aside from the *ex parte* motion and order for an inspection of a lease and the oral declarations of counsel there is nothing to show that any lease ever existed

or when the lease began or ended.  Indeed, for aught that appears from any legal evidence the rooms tiled may not have been among those leased to Hegele.

Although it is not necessary to decide whether the claim of lien was filed within the time required by statute, yet we note in passing that defendant's exhibit 2 is not without significance for under the printed word "completed" is written "6/25-14" indicating that the work was completed on June 25, 1914.

On the record as we find it, the plaintiff is not entitled to enforce its claim of lien.  The decree is therefore reversed, the suit is dismissed, and the plaintiff is remitted to an action at law for the recovery of whatever sum may be owing for the work performed.

REVERSED AND SUIT DISMISSED.

MR. JUSTICE BEAN, MR. JUSTICE BENSON and MR. JUSTICE MOORE concur.