[No. 3705.]

## THE LAMAR CANAL CO. v. THE AMITY LAND AND IRRIGATION CO. ET AL.

1. WATER RIGHTS—CONSTITUTIONAL CONSTRUCTION—TITLE OF STATUTE.

The title of an act, Session Laws, 1881, page 161, Mills' Ann. Stats. sec. 2264 reads "An act to provide for the extension of the right of way for ditches, canals and feeders of reservoirs in certain cases, and requiring registration of all such hereafter made or enlarged." Section 2 of said act provides that all persons thereafter constructing or enlarging any ditch, canal or feeder of reservoir, of certain capacity, taking water directly from a natural stream for irrigation, shall within ninety days after the commencement of such construction or enlargement file and cause to be recorded in the office of the county clerk a statement and map, and that no priority of right for any purpose shall attach to any such construction or enlargement until such record is made. *Held* that the subject-matter of said section 2 is not clearly stated in the title and that it is in violation of section 21, article 5 of the constitution and void.

2. APPELLATE PRACTICE—REHEARING—NEW QUESTIONS.

On rehearing of a cause on appeal parties will not be permitted to raise new questions not before raised in the case.

3. SAME—FEDERAL QUESTION.

A certificate that a federal question has been presented so that it may be reviewed upon writ of error from the supreme court of the United States will not be made when the federal question was presented for the first time in a petition for rehearing and too late for consideration by the state court.

*Appeal from the District Court of Bent County.*

UNDER the procedure provided for that purpose in the act of 1881, the district court of Bent county, in adjudicating the priorities to the use of water for irrigation in district No. 67, rendered a decree, which, *inter alia*, awarded to the canal owned by the appellant priority No. 9 as of date December 3, 1897, and to the canal of appellee, the Amity Land and Irrigation Company, priority No. 7 as of date February 21, 1887.

From the findings of fact as made by the referee and approved by the court, it appears that the work of construction on the appellant's canal was begun November 4, 1886, and on that of appellee's, February 21, 1887; but as the appellant did not file its map and statement, as prescribed in the act of the general assembly hereinafter set out, within the ninety days after the beginning of the work of construction, as therein required, and not until December 3, 1887, the date of the priority was fixed as of the date of the actual filing, and not, under the doctrine of relation, as of the inception of the work. And as the appellee filed its map and statement within said period of ninety days, the date of priority awarded to its canal under the authority of the statute was fixed as of the time when the work was begun.

To set aside the findings and decree pertaining to the canal of appellant is the object of this appeal. The decision turning upon the construction of the title of the act, that and the sections of the act involved in the controversy are given in full:

"An act to provide for the extension of the right of way for ditches, canals and feeder (feeders) of reservoirs in certain cases, and requiring registration of all such hereafter made or enlarged.

"Sec. 1. In case the channel of any natural stream shall become so cut out, lowered, turned aside or otherwise changed, from any cause, as to prevent any ditch, canal or feeder of any reservoir from receiving the proper inflow of water to which it may be entitled from such natural stream, the owner or owners of such ditch, canal or feeder shall have the right

to extend the head of such ditch, canal or feeder to such distance up the stream which supplies the same as may be necessary for securing a sufficient flow of water into the same, and for that purpose shall have the same right to maintain proceedings for condemnation of right of way for such extension as in case of constructing a new ditch, and the priority of right to take water from such stream, through such ditch, canal or feeder as to any such ditch, canal or feeder shall remain unaffected in any respect by reason of such extension; *provided, however*, that no such extension shall interfere with the complete use or enjoyment of any other ditch, canal or feeder.

"Sec. 2. Every person, association or corporation hereafter constructing or enlarging any ditch, canal or feeder for any reservoir, for irrigation, and taking water directly from any natural stream, and of a carrying capacity of one cubic foot per second of time as so constructed or enlarged, shall within ninety days after the commencement of such construction or enlargement, file and cause to be recorded in the office of the county clerk of the county in which such ditch, canal or feeder may be situated, or if such canal, ditch or feeder be situated in any water district, in the office of the county clerk of such county into which such water district may extend, a sworn statement in writing, showing the name of such ditch, canal, or of the reservoir supplied by such feeder, the point at which the head gate thereof is situated (if it be a new construction) the size of the ditch, canal or feeder, in width and depth, and the carrying capacity thereof in cubic feet per second, the description of the line thereof, and the time when the work was commenced, and the name or names of the owner or owners thereof, together with a map showing the route thereof, the legal subdivisions of the land, if on surveyed lands, with proper corners and distances, and in case of an enlargement, the depth and width, also the carrying capacity of the ditch enlarged, with the width and depth of the ditch, canal or feeder as enlarged, and the increased carrying capacity of the same thereby occasioned, and the time when

such enlargement was commenced, and no priority of right for any purpose shall attach to any such construction or enlargement until such record is made." Session Laws, 1881, pp. 161, 162.

Mr. C. C. GOODALE and Mr. JAMES W. McCREERY, for appellant.

Messrs. ROGERS & SHAFROTH, for appellees.

Messrs. GOUDY & TWITCHELL, Mr. CHARLES H. TOLL, Mr. WILLIAM R. BARBOUR, Mr. IRA J. BLOOMFIELD and Mr. C. M. CORLETT, amici curiæ.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Several important and difficult questions of irrigation law have been elaborately argued, but the disposition we make of one, that goes to the heart of the controversy and settles it, so far as concerns this review, renders unnecessary a consideration of the others. The date of priorities was established in accordance with the supposed direction of the concluding sentence of section 2 of the foregoing act. Not having made the record required in that section until after appellee's rights became thereby, as it is said, perfected, appellant's priority was fixed as of the date when its record was made, though the beginning of the work of construction antedated that of appellee. Appellant now contends that the subject-matter of section 2 is not clearly, or at all, expressed in the title of the act, and, consequently, it is void under the concluding clause of section 21 of article 5 of the constitution, providing:

" No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title ; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

To the consideration of this proposition we address ourselves.

If it be granted, as appellees maintain, that the matters contained in sections 1 and 2 are but subordinate branches of one general subject that might be comprehended in a single title and treated of in one act, the concession would not be controlling in this case; for the question before us is not whether there are only subdivisions of some general subject, or whether a good title might be drawn to cover them, but, rather, does the title which the legislature has adopted clearly express the subject embraced in section 2 of the act? The rule for determining that question has perhaps never been better expressed than in *In re Breene*, 14 Colo. 401, wherein it said:

" The matter covered by legislation is to be ' clearly,' not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning aided by superior rhetoric will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect, as well as the trained legal mind. Nothing unreasonable in this respect is required, however, and a matter is clearly indicated by the title when it is *clearly germane* to the subject mentioned therein."

Appellees concede that this title is ambiguous. In their attempt to show that it should be sustained, they argue that the only subject of the act is irrigation. The provisions of the act deal with parts of that subject and, they say, if desirable to express in the title but a single phase of that general subject, it might well have been, " An act concerning priorities of right to water," since both the first and second sections have relation to priorities in case of extensions and in case of original construction. Or, as elsewhere they say, the court should thus read this title: " An act requiring registration of all ditches, canals and feeders of reservoirs hereafter made or enlarged, and to provide for the extension of

rights of way for ditches, canals and feeders of reservoirs."
One of the friends of the court who joins with appellees in
their contention would have us reconstruct the title to make
it read: "An act for (concerning) ditches, canals and feed-
ers of reservoirs to provide for the extension of the right of
way in certain cases, and requiring registration of all *such*
(ditches, canals and feeders) hereafter made or enlarged."

Doubtless each counsel has succeeded in drafting a good
title which the legislature might have adopted, but did not;
but all of them have *signally failed* in their attempt *to show*
that the title which the general assembly did pass comes up
to the requirements of our constitution.    We have thus
stated the views and arguments of those who assert the va-
lidity of this title, for, by so doing, convincing proof is fur-
nished of the futility of their effort, even by employing their
ingenious reasoning and superior rhetoric, to show the con-
nection between the subject-matter covered by the legislation
in section 2 and the subject of the act indicated by the title.
The very argument employed and the illustrations furnished
at best show that the subject is dubiously expressed in the
title, and for that reason, under the decision from which the
foregoing excerpt is taken, section 2 must fall.

But we go further and say that, though this title contains
but one general subject, the matter covered by the legislation
in section 2 is clearly not germane thereto.    A careful analy-
sis of the title discloses that the general subject therein ex-
pressed is not "ditches, canals and feeders of reservoirs," or
"irrigation," but that it is "the extension of the right of
way for ditches," etc.    If we understand their argument, all of
the counsel who uphold this title, both those directly connected
with the case and *amici curiæ*, admit that there is doubt
about the antecedent of "such," whether it relates to exten-
sion of the right of way for ditches, or to the ditches them-
selves ; while those attacking the title insist that, according
to all recognized rules of construction, it relates to the ex-
tension.    That these rules make "such" relate to "exten-
sion " is so plain that it is idle to argue the proposition.

But it is said that we do not speak of an extension as "made or enlarged," though we might say that of ditches, and therefore "such" relates to ditches, and not to extensions. In our irrigation statutes, the words "construction, enlargement and extension" of ditches are frequently employed, but rarely is the "making" of ditches spoken of, though that would be a correct use of language. It is just as accurate, however, to say of the extension of the right of way for a ditch that it has been made or enlarged, as to say that a ditch has been made or enlarged; for, as will be seen from section 1, extending the right of way for a ditch by carrying the head gate farther up the stream necessarily involves the making of a ditch or other conduit for carrying water, that is, the extension is made by making a ditch, etc., and such extension may subsequently involve the enlarging of its capacity. When, therefore, we use these words in speaking of an extension, we do so in precisely the same sense we do when speaking of making or enlarging a ditch. So the presence of "made or enlarged" in this title is not persuasive as to the point in question.

Suppose, by any stretch of construction, "such" could be said to relate to "ditches," we are still unable to perceive how the subject-matter of section 2 would be valid; for, in this supposition, registration is required of such ditches only as are of the class whose head gates are carried up the stream and the right of way therefore has been extended as provided for in section 1, and section 2 contains no provision therefor.

Our construction of this title, then, is this: It expresses but one general subject, and that is, the extension of the right of way for ditches, etc. The registration of such extensions as may thereafter be made or enlarged is but a subordinate division of that general subject, and legislation covering that division might be included in an act containing this title, but which, confessedly, has not been attempted here.

From this it follows that the matter legislated about in

section 2, which relates to the filing and recording of maps and statements of all ditches and enlargements thereof thereafter to be made, and their priorities when made, is not covered by the title, and under the concluding clause of the section of the constitution, is void as not being expressed in the title.

We have not arrived at this conclusion hastily, or without long and careful consideration; not that we entertain any doubt as to its soundness, but because, among other reasons, of the possible consequences which appellees' counsel apprehend might attend its announcement. Upon the original oral argument we recognized the gravity of the question, and were then of opinion that section 2 could not be sustained. But as it was, and is, our duty to resolve every doubt in favor of the statute, and to declare it valid if it is consistent with our organic law, after a careful examination of the printed briefs, of our own motion, and with the view, if possible, to obtain further light, we requested a second oral argument by the counsel for the parties to the cause and permitted other counsel, as friends of the court, connected with other cases involving the same question, to appear thereat and also file printed briefs. After a thorough consideration of the questions involved, aided by the research of learned counsel, our former opinion is confirmed, and we have nothing to do but declare this section invalid, because it so clearly is inhibited by our constitution.

The dangers and confusion which counsel have pointed out as likely to follow this decision are largely imaginary. Rights, if any, which have become vested; priorities, if any, which have been established by decree of court upon the basis of this act and by the lapse of time cannot be reviewed are certainly protected. Other rights, if any, which have been settled by judicial decree, but not so as to be beyond the reach of review, or such as are now in process of adjudication, will be determined in accordance with the law as it is and always has been, and not as this invalid act prescribes. The mere fact that the statute has been in existence for eigh-

teen years, while a proper matter for consideration is not controlling. It is of common knowledge that almost from the time of its passage the question of its validity has been mooted among the members of the bar, and we know that in this court its constitutionality has been repeatedly raised, though its determination has not hitherto been necessary. Certainly the appellant has been diligent in raising it, and made the objection at the first opportunity, and has persistently followed it up.

As the appellant claims that the quantity of water awarded it by the decree was not sufficient, and as the appellees contend that, in the absence of the statutory test of the date of priority, there is not sufficient definite evidence in the record to determine it, we have deemed it best, in the conflict of the testimony and the uncertainty that necessarily must be present when it is considered that the court below in establishing and fixing the dates of the priorities proceeded upon an improper basis, not to attempt a reformation of the decree; but rather to remand the proceeding with instructions to the district court to vacate the decree in so far as it affects the canal of the appellant, and to proceed either upon the testimony now before it, or, if the parties, or either of them so desire, to take additional evidence, and upon all of the evidence to make findings and enter a decree to conform to the views expressed in this opinion.

The decree, therefore, is reversed, and the cause remanded.

*Reversed.*

### PETITION FOR REHEARING.

PER CURIAM. In support of their petition for a rehearing, counsel for appellees have urged the same matters that were previously heard. Further consideration of the important question involved has not resulted in a change of our views.

In an additional brief in support of the application, for the first time the point is made that, inasmuch as they made their appropriation of water in accordance with the pro-

visions of the statute in question, and relying upon the same as valid, incurred expenses and made investments upon the strength of it, and since the legislative and executive departments of the state have recognized its validity since its passage, the appellees have acquired a vested right to their appropriation which, after it was so perfected, it is as much beyond the power of this court, as it would be of the legislature, to destroy ; and that, if the decision in this case holding unconstitutional the statute should now be applied to them, the practical effect would be to impair the obligation of a contract between appellees and the state which was virtually entered into when appellees made their appropriation upon the faith of the validity of the law.

In passing it is pertinent to remark that the supreme court of the United States has held that to " come within the provision of the constitution of the United States, which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by some act of the legislative power of the state, and not by a decision of its judicial department only." *Central Land Co. v. Laidley,* 159 U. S. 103.   But we shall not enter upon the investigation of this question, or make any determination concerning it, for, under well recognized rules of practice, the appellees cannot in a petition for rehearing for the first time raise a new question.   Neither in the trial court nor in this court at the original hearing was any such question mooted, and it cannot now be injected into the case.   *Orman et al. v. Ryan et al.,* 25 Colo. 383, and cases therein cited.

Learned counsel request, if we adhere to our former opinion, that we make the proper certificate that a federal question has been presented so that it may be reviewed upon writ of error from the supreme court of the United States. If, in a proper case, a certificate be necessary, we cannot give it in this case, for we have just decided that the federal question attempted to be raised was presented too late for our consideration.   Moreover, if we should comply with the

request and make the desiréd certificate—which we would gladly do if it was proper—it would not avail appellees, though perhaps it is not for us, but for the federal court, so to determine. For when, in the state court, "the federal question is suggested for the first time in a petition for rehearing after judgment, it is not properly raised, so as to authorize the supreme court of the United States to review the decisions of the highest court of the state." *Bushnell v. Crooke Mining Co.*, 148 U. S. 682; Desty's Federal Procedure (9th ed.), § 223; *Texas, etc., Ry. v. Southern Pac. Co.*, 157 U. S. 48; *Butler v. Gage*, 138 U. S. 52; *Leeper v Texas*, 139 U. S. 462.

The petition for rehearing will be denied, and it is so ordered.