## ·O'REILLY v. NOXON.

**1. Land Department—Review of Decisions by the Courts—** If the officers of the Land Department err in the construction of the law applicable to the facts of the case, their decisions may be reviewed and annulled by the courts.—(371)

——So, if the decision is procured by fraud.—(371)

If they err as to matter of fact, the sole remedy is by appeal to another officer of the department.—(372)

Error in law must be clearly established, and it must be shown that the party complaining was, by reason of such error, deprived of substantial rights.—(373)

**2. Appeals — Transcript of Record — Maps, Exhibits, etc. —** Maps lodged in this court at the time of filing the record of the lower court, but not referred to in the transcript or the clerk's certificate thereto, are no part of the record, and will not be considered.—(373)

**3. Pleading — Manner of Averment — Certainty — An** averment that certain maps were "mere duplicates" of other maps, expresses only the opinion of the pleader.—(374)

So, an averment that affidavits were filed "alleging," or "tending to show" certain matters.—(374)

A complaint seeking to review the decision of the Secretary of the Interior upon conflicting claims to the site of a reservoir which fails to disclose the Secretary's opinion or how he regarded the questions involved, is insufficient.—(374, 375)

**4. Public Lands—Reservoir Site—Effect of Filing Thereon** —The approval by the Secretary of the Interior of a filing upon lands in the public domain, as the site of a reservoir, segregates such lands, and no subsequent entry thereof, or claim thereto, can be made, until such first selection and filing is, in some manner, annulled.—(376)

**5. Department Decisions — Effect —** The approval by the Land Department of a selection and claim made by a corporation to public lands, as the site of a reservoir, necessarily implies that the corporation has a legal existence, and has complied with the laws and customs regulating the location of reservoirs, and the appropriation of waters therefor.—(376)

The corporation is entitled to possession of the site so awarded to it, until, in some proper proceeding, its claim is set aside by the sovereign authority.—(377)

The rights so awarded to the corporation may be effectually transferred.—(377)

The department may, notwithstanding an adverse claim and filing, permit the assignee of the corporation to present an amended or new claim, enlarging the original boundaries.—(377, 378)

6. **Pleading—Certainty**—Where complaint alleges that the Secretary of the Interior considered the question of the legal existence of a corporation, but fails to set forth the evidence upon which such consideration was had, or the conclusions rela‑ tive thereto, it will be presumed the corporation had a legal existence.—(374)

*Error to Denver District Court*—Hon. PETER L. PALMER, Judge.

Mr. HENRY B. O'REILLY for plaintiff in error.

Mr. E. C. STIMSON, Mr. C. W. WATERMAN and Mr. P. M. BRERETON for defendant in error.

Plaintiff in error seeks to have reversed a judg‑ ment which sustained a demurrer to an amended com‑ plaint filed by him in the court below. The suit was brought to divest from Noxon the right-of-way for a reservoir site lying within the South Platte forest reserve, in Park County, and vest the same in O'Reilly, on the ground that, through an error in law, the Secretary of the Interior accepted and approved, or caused to be accepted and approved, an applica‑ tion for the reservoir site made by Noxon, and re‑ jected an application therefor made by O'Reilly, when, in the absence of that error, he would have approved, or caused to be approved, O'Reilly's ap‑ plication and rejected Noxon's.

The complaint, as amended, alleges, in sub‑ stance, that O'Reilly, on February 25, 1898, made an application for right-of-way for the reservoir site under the provisions of sections 18 to 21 inclusive, of the act of Congress approved March 3, 1891, and the same was received by the registrar of the land office at Leadville, filed, and, without action thereon, transmitted to the commissioner of the General Land

Office at Washington for consideration by the department; that, prior thereto, on February 3, 1898, Noxon made an insufficient application for a substantial portion of the same reservoir site; that on June 20, the commissioner rejected both applications, for the reason that a prior application of the Tarryall Reservoir and Ditch Company, for the same site, had been approved February 4, 1893; that both Noxon and O'Reilly appealed from that decision to the Secretary of the Interior; that O'Reilly, "in support of his appeal, filed affidavits alleging and showing that the Tarryall company had never done anything in or about said reservoir looking to its construction or utilization save the original location and survey thereof; that it had wholly surrendered and abandoned said location since 1895; and that no stock of said company had ever been subscribed for, allotted or issued; that such showing and allegations were not controverted"; that Noxon, in support of his appeal, "filed affidavits tending to show that, in 1895, he had purchased all the rights, franchises, property and effects of the Tarryall company, and had taken possession of this reservoir site in February of that year with the consent of the Tarryall company; that, in pursuance of said alleged purchase, he had commenced preliminary work on said reservoir January 15, 1898, and that such work and possession had since continued"; that November 2, 1898, the Secretary found that Noxon was the transferee of the Tarryall Reservoir and Ditch Company, and that, although the latter company had failed to build its reservoir within the five years required by the 20th section of the act, the transfer carried with it whatever right-of-way had been acquired by the company under the act, and held that Noxon had the right "to file a new map of location, to operate only upon such portions of the public lands as are free from any claim or

right at the date of the approval of the new map of
location," and thereupon sustained the rejection of
O'Reilly's application, and instructed the commis-
sioner to examine the map submitted by Noxon as to
its conformity with the regulations adopted by the
department to carry into effect the act of March 3,
1891, and report upon it with recommendations.

The complaint further alleges that, upon appli-
cation of O'Reilly, a review of that decision was al-
lowed. It then recites that, "September 3rd, 1899,
the present Secretary, after reviewing the history of
the case and the previous rulings and decisions, and
after considering the validity of the corporate exist-
ence of the Tarryall Reservoir and Ditch Company,
and of Mr. Noxon's claims as its transferee," made
certain declarations, which are set forth, to the effect
that, if the Tarryall company had and maintained
a legal corporate existence, any rights it may have
acquired by the approval of its reservoir site were
transferred by the sale to Noxon; and if, on the other
hand, the company had no legal corporate existence,
and for that reason could not acquire any right under
the act of March 3, 1891, by reason of which the ap-
proval of a reservoir site to it was of no operative
effect, and if such approval could be wholly disre-
garded without a judicial, legislative or executive
declaration to that effect, it would, nevertheless,
leave Noxon as the first applicant for the site; that
while it will be assumed that the Secretary of the In-
terior had before him sufficient evidence of a right to
appropriate water upon the part of the Tarryall
company at the time of the approval of its site, which
right may have passed to Noxon on his purchase,
there was no showing that such right of appropria-
tion, dependent as it must be upon the laws of Colo-
rado, was an existing one at the time of the filing of
Noxon's application. Directions then follow to the

commissioner to examine the application and accompanying map submitted by Noxon, to ascertain whether they were in conformity with departmental regulations, and Noxon was required to make a *prima facie* showing that he was possessed of such a right to appropriate and divert waters as would enable him to use the proposed reservoir site for the purposes named in the statute, upon which questions O'Reilly was to be given an opportunity to be heard, and the former departmental decision was recalled and this substituted in its place.

The complaint also alleges, substantially, that, immediately thereafter, in attempted compliance with that decision, Noxon filed with the commissioner copies of certain maps and statements "as filed in 1891 by the Tarryall company," and "by Noxon as his application of February 3, 1898," which are alleged to be identical; numerous affidavits and other documents set forth in substance only, and then continues: "That upon this showing, and without giving plaintiff any opportunity to controvert the same, the Commissioner promulgated the decision of the Secretary, * * * and therein assumed and declared that said Noxon had made complete and satisfactory showing of the necessary water rights; that as to the map filed by him February 3, 1898, the Commissioner said: 'An examination of Noxon's map shows that the same was not prepared in conformity with the regulations of February 20, 1894, in force at the date of filing'," setting forth the particulars wherein it failed to conform with the regulations in force, and directed that, if Noxon should prepare and file a new map to conform in all respects with the requirements of an enclosed circular, his application be approved. It is stated that the circular enclosed by the Commissioner was one embracing certain rules and regulations in the amended

complaint set forth as promulgated and published by the department. It then alleges "that no new map of said location and survey was made by or in behalf of said Noxon, as required or directed by the Commissioner, or at all," and that Noxon failed in every particular required by the regulations contained in the circular; "that, on the contrary, commencing October 5, and ending November 4, 1899, said Noxon caused a new and independent survey to be made of said reservoir site," much greater in area and capacity than that covered by his former application, and on December 20, 1899, filed duplicate copies thereof properly prepared, with affidavits and certificates, together with the field notes, in the Leadville land office, "as a new and independent application for right-of-way for said last described reservoir site, under said act of Congress"; that, after certain corrections, as required by the Commissioner, they were finally submitted to him for approval.

It is then alleged:

"That April 27, 1900, the Commissioner rendered his decision in the premises as follows:

"After reciting the history of the contest to the Secretary's decision on review, September 2, 1899, and quoting the Secretary's instructions as above set forth, * * * he proceeds:

" 'On September 5 and 20, the attorneys for Noxon filed evidence of water right which was considered in office letter of September 27, 1899, promulgating the decision of the department dated September 2, 1899. The evidence mentioned included a certificate of the county clerk and recorder of Park County, Colorado, that the plat of the Tarryall Reservoir and Ditch Company was filed in his office May 19, 1891, and that the plat of the Tarryall reservoir was filed by Franklin F. Noxon on October 28, 1898. Also an affidavit by the state engineer to the

effect that the Tarryall Reservoir and Ditch Company filed a plat of its reservoir site in his office on August 29, 1891, together with other papers, as required by the laws of Colorado; and that Franklin F. Noxon, on October 22, 1898, filed in his office a plat of the Tarryall reservoir site and other papers, the latter filing being identical with the former, and both complying fully with all the requirements of the statutes of the State of Colorado.

" 'Under the Secretary's decision, the only issue now to be determined is whether Noxon has such a water right as will enable him to use the proposed reservoir site for the purposes as mentioned in the statute.

" 'As to the requirement that the maps should be accompanied by proof that the plans and purposes of the projectors have been regularly submitted and provided in accordance with the local laws and customs governing the use of water in the state or territory in which the same is located.

" 'This requirement is shown by the affidavit and certificate of the state officers to have been complied with in connection with both applications under which Noxon claims.

" 'The department, in its decision of January 13, 1899, *New Bear Irrigation Company v. Roberts* (not published), while adhering to the uniform ruling that it will not attempt to determine conflicting water rights or interfere with the control of water, hold that the question as to whether the appellant can use the water without seriously impairing or defeating the vested rights of others must be definitely settled before approving the right-of-way.

" 'O'Reilly's application, filed February 25, 1898, is based on notice of water appropriation filed for record in the office of the county clerk and recorder February 21, and in the office of the state

engineer February 23, 1898. His application, as has been previously held, conferred no rights upon him in the absence of judicial or legislative forfeiture of the grant of the Tarryall Reservoir and Ditch Company by the approval of its map on February 4, 1893. The mere filing of notice of water appropriation forms but one of a series of acts which, taken together, perfects the right of the water; the subsequent acts of diligently pursuing the work of construction and the actual diversion of the water to a beneficial use, has not, and could not, be carried out by O'Reilly, as the proposed reservoir is within the South Platte Forest Reserve, and work could not be prosecuted thereon without the permission of the Secretary of the Interior, which permission could not be granted until after the lawful declaration of forfeiture of the approved rights of the Tarryall company.

" 'Noxon claims as transferee under the approved application of the Tarryall Reservoir and Ditch Company, which conferred upon him the right to go upon the land and commence work, as he did, according to the evidence submitted, in January, 1898; and also under his individual application which the department, in its decision, held he had a right to file. Both applications are accompanied by proof that the plans and purposes of the projectors have been regularly submitted and approved in accordance with the local laws or customs governing the use of water in the state or territory in which the same is located.'

"It must be held, therefore, that Noxon has shown a *prima facie* right to water, and that O'Reilly has failed to show any vested right that will be impaired or defeated by the approval of the former's application.

(24)

"The map and field notes submitted by Noxon (December 20, 1899), are herewith returned for the correction of certain minor errors or omissions noted in pencil on the papers.

"Noxon will be allowed a reasonable time in which to make the necessary correction and refile the papers, when, if no further person appears, they will be submitted to the Honorable Secretary for approval, in the event of which O'Reilly's application will stand rejected in accordance with departmental decision of September 2, 1899."

From this decision, O'Reilly appealed to the Secretary, and, upon leave, filed two additional affidavits in the cause: One, by John E. Field, to the effect that he had made a personal examination of the records of the office of the State Engineer of Colorado with reference to the Tarryall reservoir site as filed by the Tarryall Reservoir and Ditch Company; "that from such examination he declares the fact to be that May 18, 1891, there was filed in said office by said company a map of a reservoir site and a certificate for a reservoir right-of-way and water under section 2265, Mills' Ann. Stats., on the Tarryall Creek, in Township 11 S., R. 72 W., in Park County, Colorado; that, August 29, 1891, another map was filed by said company, of a reservoir site in said Township; that it was not accompanied by, nor was there ever filed, any statement or certificates under section 2265; but upon this map was a statement by Mr. Aulls, chief engineer of the company, as follows: 'This map is filed as a map of an amended and final location of survey amendatory to the one filed in the State Engineer's office May 18, 1901'." The other, by Addison J. McCune, who was then, and had been since April 10, 1899, State Engineer, and who had made, at the request of Noxon, affidavits relative to the Tarryall reservoir site and

the water rights thereof as claimed by Noxon, which is to the effect that, of his own knowledge, he knows nothing of the regularity or validity of the transfer by the Tarryall Reservoir and Ditch Company to Noxon, of the reservoir site in question, and in other respects substantially confirms the Field affidavit.

March 8, 1901, the Secretary rendered his final decision, which is set forth in the complaint, affirming the decision of the Commissioner, approving the map and application of Noxon, and rejecting the map and application of O'Reilly. Reference will be hereinafter made to other matters pertaining to the complaint.

The demurrer interposed was upon two grounds: First, that the court had no jurisdiction to review the judgment of the Secretary of the Interior under the laws and facts as set forth in the complaint; and, second, that the complaint did not state facts sufficient to constitute a cause of action.

Mr. Justice White delivered the opinion of the court:

We will assume, but not decide—as the question is not presented—that the approving of a right-of-way for a reservoir site stands upon the same basis, so far as the powers of the courts to review the same are concerned, as does the issuing of a patent by the government, and that our district courts have jurisdiction thereof; and upon that presumption, will proceed to determine the case.

The officers of the Land Department are specially designated by law to receive, consider and pass upon proofs presented with respect to the matters here involved. If they err in the construction of the law applicable to the facts of the case, or if their decision is brought about by fraud, their findings may be reviewed and annulled by the courts, in a proper

case, but their findings and conclusions as to matters of fact are conclusive, and if they err in that respect, the remedy is by appeal from one officer to another of the department.

In *Johnson v. Towsley*, 13 Wallace 72, it is declared that "courts of equity, both in England and this country, have always had the power, in certain classes of cases, to inquire into, and correct injustice and wrong, in both judicial and executive action, founded in fraud, mistake or other special ground of equity, when private rights are invaded," and it is there held that, after title of land has passed from the government to individuals, and the question has become one of private right, the jurisdiction of courts of equity may be invoked to ascertain if the patentee does not hold in trust for other parties, and if it is found that, by an erroneous application of the law, the patent should have been issued to another, the court will correct the mistake.

In *Moore v. Robbins*, 96 U. S. 530, the declaration of that court is, that equity will interfere when it is clear that such officers have, by a mistake of law, given to one man the land which, on the undisputed facts, belongs to another. In *Marquez v. Frisbie*, 101 U. S. 473, in considering the language of the Moore-Robbins case, it is declared that "this means, and it is a sound principle, that where there is a mixed question of law and of fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive."

The courts will not review the decisions of the Land Department on questions of evidence, nor as to the method of the officers thereof in arriving at their conclusions. Unless the facts, and all the facts, together with the findings upon such facts, are disclosed, or enough undisputed facts are presented,

which were proven before the department to clearly establish that an error of law was committed, and that the party complaining was thereby deprived of his substantial rights, courts cannot hold that the law was misconstrued by the officers of the department. —*Durango, etc., Co. v. Evans,* 25 C. C. A. 523-529.

The defendant contends that the complaint falls short in these essential requirements. He asserts that "not a single map or drawing of any kind was incorporated in the complaint." Certainly, if that is true, it renders the complaint vulnerable to the objection urged. It appears in the bill of exceptions that, at the hearing upon the demurrer, and before the judgment thereon, leave was granted to plaintiff to amend his amended complaint by adding to and incorporating therein: "Paragraphs to be numbered $14\frac{1}{2}$, $23\frac{1}{2}$ and $37\frac{1}{2}$, thereby making the maps, certificate, affidavit and other data therein, parts of said complaint." While the maps are not bodily within the complaint, nor in the record as here presented under the certificate of the clerk of the district court, certain maps said to be the maps of O'Reilly, filed February 25, 1898; of Noxon, filed respectively February 3, 1898, and December 20, 1899—were lodged with the clerk of this court at the time of filing the record herein, and plaintiff contends that thereby they became, and are, a part of the record. We cannot concur in this view. The means of identification are wholly lacking. It is essential that all matters constituting the record be bodily therein, or, at least, brought therein by reference, and so identified by the clerk's certificate thereon or in some other appropriate way. Without such means of identification, maps, instruments, matters and things that were never before the trial court might be interpolated into the record here. Furthermore, plaintiff has wholly failed to make any attempt to bring into

the record the maps, application and field notes of the Tarryall Reservoir and Ditch Company, except solely by alleging that the maps and data thereon, as filed by Noxon February 3, 1898, were duplicates of those filed by the Tarryall company. Such allegations are insufficient. They constitute only the opinion of the pleader with reference to such maps. Some affidavits are set forth in full in the complaint; others in substance only. The words "alleging," "showing" and "tending to show" are used as a summary and a conclusion of the pleader of what the undisclosed evidence established. In one place it is alleged, "that, on November 2, 1898, the then Secretary rendered his decision upon Noxon's appeal, wherein he declared, among other things," followed by what purports to be a synopsis of the Secretary's decision. What the "other things" were which the Secretary declared, is in no wise disclosed.

Plaintiff contends that the Tarryall Reservoir and Ditch Company never had a legal existence, as, he alleges, no stock thereof was ever subscribed for, issued or allotted; that it was incapable of becoming vested with any title or franchise or of transferring the same, and even if it were a legal entity, it forfeited all its rights by its failure to construct its reservoir within the time limited by the act, and, therefore, Noxon acquired nothing as the transferee of that company. If the legality of the corporation could be inquired into in this character of a case, the complaint before us in no wise presents the matter. The allegation in that respect is, that O'Reilly "filed affidavits alleging and showing that * * * no stock of said company had ever been subscribed for, allotted or issued; that such showing and allegations were not controverted." The affidavits themselves, or when or by whom made, are not set forth.

Further, it is recited that the Secretary, "after

reviewing the history of the case and the previous rulings and decisions, and after considering the validity of the corporate existence of the Tarryall Reservoid and Ditch Company, and of Mr. Noxon's claims as its transferee, declared: 'This matter is not, however, of controlling importance as between O'Reilly and Noxon, because, in either event, Noxon has the advantage'," but it fails.to disclose of what the Secretary's review consisted, or how he considered the validity of the corporate existence of the company, or what conclusion he reached thereon. For aught that appears, the Secretary may have found that the affidavits were wholly insufficient, that the corporation was a legal entity and had forfeited no rights.

We could very properly end this controversy without further comment, but believing, as we do, that the Secretary's decision, upon the facts presented by this record, was sound in law, we are constrained to so hold. Mills' Annotated Statutes, § 2265, provided, among other things, a method of preparing maps and declaratory statements concerning applications for reservoir sites. The contention of plaintiff is, that the assignment of the Tarryall Reservoir and Ditch Company of its rights to Noxon, was of no effect, and that Noxon's filing of December 20, 1899, was subsequent to O'Reilly's, and, therefore, conferred no rights upon Noxon; and as the maps and statement filed by Noxon February 3, 1898, were not in conformity with the requirements of the statute, while the map and statement filed by O'Reilly February 25, 1898, were in conformity therewith, no vested rights accrued to Noxon under either of his filings or the assignment; whereas, vested rights did accrue to O'Reilly under his filings, notwithstanding this court, in Lamar Canal Co. v. The Amity L. & I. Co., 26 Colo. 370, on July 17, 1899, held said statute unconstitutional and void.

Plaintiff's contention is not well based. He assumes that which the record does not disclose, to wit: that he initiated rights under § 2265, *supra,* or at all. The filing upon the site by the Tarryall company, and the subsequent approval of such filing by the Secretary, whether valid or voidable, segregated the land from the public domain and appropriated it to private use, so that no legal entry of it could be made by O'Reilly or by any other applicant, until there was a determination, either judicial, legislative or executive, annulling such approval and restoring the site to the public domain.

In *James v. The Germania Iron Co.,* 107 Fed. 597, 603, it is held: That the entry of public land under the laws of the United States, whether legal or illegal, segregates it from the public domain, appropriates it to private use, and withdraws it from subsequent entry or acquisition until the prior entry is officially cancelled and removed. Many cases are therein cited substantiating the rule. Analogous in principle is *Gurney v. Brown,* 32 Colo. 472, which was carried to, and affirmed by, the United States Supreme Court, in 201 U. S. 184. In accepting and approving the application of the Tarryall company, the department necessarily held upon the record before it that the company had a legal existence; that it had complied with the laws and customs regarding the construction and location of reservoirs and the appropriation and priority of water rights therefor. This would necessarily stand until otherwise properly adjudicated. O'Reilly's application, therefore, vested no rights in him in the absence of a previous judicial, legislative or executive forfeiture of the grant to the Tarryall company.

If the rights acquired by the Tarryall company under the approval of its reservoir site were subject to forfeiture by its failure to construct the reservoir

within the period of five years fixed by law, it or its transferee, nevertheless, had the right of possession thereunder until such forfeiture was declared in a proper proceeding. The approval of the company's application was, in effect, the sovereign saying to all, such company has an apparent right to the premises described, which must be recognized and respected until the sovereign, in some proper procedure, inquires into its validity. It may be, when the inquiry is made, the apparent right becomes, in reality, no right at all, but until such inquiry and determination, the apparent right must be respected. Whatever rights the company possessed were transferred to Noxon, and, under such transfer, he went into possession of the reservoir site in January, 1898, and commenced work thereon, continuing the same through the pendency of this controversy before the department. Under such circumstances, if Noxon chose to waive his rights, or apparent rights, under the approval of the site to the company and before the sovereign had questioned such rights, and to ask that a site embracing the same and other unappropriated land be approved to him upon a new application presented in his own name, the authority of the Secretary of the Interior to grant it was certainly ample. Moreover, it could very properly, under the circumstances of this case, be considered an extension of time in which to complete the work. The transferee of the company was then in possession, prosecuting the work, and no other rights had attached. Though it is designated a new application, the name applied does not necessarily determine the character of the instrument. Furthermore, the transaction could be properly held, in effect, the relinquishment of the filing by the Tarryall company and its transferee, and the acceptance by the department

of a new filing by Noxon before the intervention of any adverse claim.

We think the conclusion of the department, that O'Reilly had failed to show any vested rights that would be impaired or defeated by the approval of Noxon's application, was just and right, and as to whether Noxon had fully complied with all the requirements of the law and the rules and regulations of the department, we have no concern. Unless the rights of others were affected, the matter is exclusively between Noxon and the sovereign. The judgment is, therefore, affirmed.        *Affirmed.*

Decision *en banc.*

Opinion filed December 5, 1910; rehearing denied February 6, 1911.